The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. The first case we're going to hear is United States v. Murn and Ms. Silver will hear from you. Thank you, Your Honors. Good morning. My name is Joanna Silver and I represent the appellant Steven Murn. Upward variances are rare. In 2017, courts across the country imposed an upward variance of only 2.1% of all cases. This case does not merit inclusion in that 2.1% and it certainly does not merit a variance of the degree imposed by the district court. The 144-month sentence, which was imposed on top of two years that Mr. Murn had already served in state court for the same conduct, is based on conclusions by the district court that are not supported by the record and are in conflict with the court's guidelines rulings. Most important, the sentence fails to sufficiently account for the unusual and extenuating mitigating circumstances that led Mr. Murn to commit this offense. This sentence constitutes an abuse of the court's discretion and it must be vacated. I'd like to walk you through the district court's reasons for imposing its significant variance. Beginning with the first and most troubling reason, which came when the court addressed the need to deter Mr. Murn and protect the public. The court erroneously concluded that when Mr. Murn relapses, he is a substantial threat to public safety and that he will always be at a risk of relapse. But this factual conclusion is not borne out by the record. And more important, it reveals the degree to which the court discounted and maybe even didn't understand the importance of the mitigating evidence that was presented to him. How many prior convictions does he have? He has approximately 18 prior convictions, Your Honor. And the court, and this is one of the areas in which the... He must have relapsed somewhere during that period. There's actually no evidence in the record of a relapse prior to the relapse that caused him to commit this offense, Your Honor. Well, he committed the prior 18 offenses all at one time? No, Your Honor. Mr. Murn, if you look at the record, began using drugs when he was 8 years old. And he had his first psychiatric hospitalization when he was 13. So throughout his life, up until the one other violent offense he committed, which was a bank robbery when he was 36, he had a criminal history that was, as the district court acknowledged, very similar to the criminal history of a lot of serious addicts. Thefts, CDS possessions. There's no evidence other than a short period of time when he was in the military that he wasn't using drugs. So he went his entire life, essentially, until he was 36, using drugs, not being treated, suffering from depression. And so the fact that it wasn't until- So you don't count his recidivism by reason of drug addiction? Oh, we do count it, Your Honor, but the district court itself recognized two things. One is that the fact that his criminal history is compelled by or created by his drug addiction is mitigating. And if you look at the court's rationale injecting the government's upward departure of a criminal history, the court specifically says this, that most of these offenses are minor and driven by his addiction. But the second, Your Honor, is that if you actually look at the court's- If you're going to protect the public from a multiple repeat offender, it still sounds like you're saying if drug addiction causes the multiple repeated offenses that that's essentially being ignored. No, I'm not saying it should be ignored at all, Your Honor, and it's not ignored. So the guidelines, the criminal history category in the guidelines account for Mr. Mearns' criminal history. And the court itself recognized that we have timing rules in the guidelines for a reason, and that is because the older a criminal offense is, the less relevant it is to someone's risk of recidivism endangered to the public. And that reason applies when you're conducting the analysis under 3553A as well. So there's no reason that that same analysis that the older offenses shouldn't be counted as heavily against him now shouldn't apply in the variance context. And so we're not disputing the criminal history category that applied in this case. What we're disputing is the unreasonable weight that the district court gave to the criminal history in imposing this extreme variance in this case. The other erroneous conclusion that the court came to when it was looking at Mr. Mearns' criminal history in particular, and this is now looking at the analysis under 3553A, is that the court said that he has several violent offenses. And that's not borne out by the record either, Your Honor. As I said, his only violent offense was the one prior bank robbery, and that bank robbery wasn't actually committed with a weapon. There was a fake pistol in one of them. But that was the only violent offense in his history. Well, I mean, bank robberies do range, and that is true, and that's something that we acknowledge, and we also acknowledge that the bank robbery in this case was on the more severe end. And we don't dispute that at all, Your Honor. And that's something that's really important, is that we are not saying that Mr. Mearns did not commit a serious offense in this case. We are not saying... It was a series of offenses that really were not charged, but he resisted police officers. He threatened them in the hospital. He tried to take the pistol away up in Pennsylvania. He resisted and threatened to kill, and that's all post-bank robbery where he used a pipe bomb. And the question is, your biggest argument seems to be, well, this is part of the relapse, but that might go to the notion of punishing somebody. But the court also had the biggest concern is to protect the public. The incapacitation of a person who relapses and does this over his entire life. And I think that was the judge's main concern is to protect the public. I understand that, Your Honor. I have a few responses. The first is that the sentence here, the guidelines actually, and the sentence that Mr. Mearns is serving in state court in Pennsylvania do reflect all of the facts of the offense that Your Honor just recounted. But I was responding to your fact that you were sort of suggesting the public doesn't need to be protected because he just had this one violent felony. And I'm suggesting that the conduct in connection with the felony, as well as the post-felony conduct, as well as the long background, shows that he just can't control himself. And now he has become very aggressive, and the public does need to be protected. Well, Your Honor, I actually respectfully disagree. I think that the record that we presented below shows that this was an incredibly unusual case, and this is not indicative of the type of behavior that Mr. Mearns has engaged in prior to this time. Bank robbery. He gets out of jail. A couple years later, he's back robbing a bank. And that was not for no reason, Your Honor. That wasn't the issue that the court addressed. The guy may have a great reason. He may think that every time he gets high, he needs money to get more things. That's, for him, a great reason. But that doesn't help the public. And that, respectfully, Your Honor, is not what happened in this case. That's absolutely not what happened in this case. Of course not. That's a hypothetical addressing your argument. Well, no, because my argument is not hypothetical. It's actually rooted in the real facts of this case, Your Honor, which is that Mr. Mearns actually remained clean and sober for two full years after getting out, had a very good, high-paying job as a truck driver, and it wasn't until he suffered a massive heart attack, had to have double bypass surgery, was placed in a medically induced coma, a coma that was induced by the use of opioids. I understand all that. That's your justification to reduce punishment. Yes. But that is not a reason to reduce the time by which the public has to be protected by incapacitation, which is one of the main purposes of sentencing. It's one of the four purposes of sentencing, and incapacitation. And that's what the court was concerned about. So, respectfully, the mitigation and the facts that led Mr. Mearns to commit this offense go both to mitigation in the general sense that we want to, you know, feel sorry for him and reduce the punishment. That's actually only one piece of it. But the other piece is that it actually does suggest that he is less of a danger to the community in the future, poses less of a risk of recidivism than the district court concluded. And that's where we take issue with the district court's conclusion and think it was wrong. Because if you look at the evidence that was presented, this confluence of facts is not something that is ever going to happen again. This is not a case where Mr. Mearns demonstrated that, you know, every time he loses his job, he relapses. Or every time he has any sort of exposure to opioids, he relapses. That's not what happened here. There was a significant series of events that is not likely to happen again. And so it's simply not reasonable to conclude that every time he relapses or every time something goes wrong in Mr. Mearns' life, that he's going to relapse and be a risk of danger to the public. In addition, we presented a fairly extensive expert report by an expert who noted that Mr. Mearns had never received medically-assisted treatment for his opioid addiction and that she believed that if he did receive that treatment, his risk of recidivism would drop significantly. But the district court considered all of that, right? We've read the record, obviously, and at the sentencing hearing, the district court talked about balancing all of these factors. Are we not just here arguing that the weight distribution, the defendant disagrees with how the district court afforded weight to all these different factors under 3553A? Your Honor, the court did consider these factors, and that's why we're not making a procedural reasonableness argument in this case. And what you just said is what the government has accused us of doing, is asking this court to reweigh the factors. And it's easy to just say— I hope my question wasn't as accusatory as perhaps the government's brief was. Sorry. But the fact of the matter is, if you actually look at the cases in which this court has actually vacated sentences for being substantively unreasonable— admittedly, mostly it's because the sentences were too low— that's what the court of appeals has done. When the court of appeals reviews a sentence, it has to actually look at the factors. And, you know, we could call it whatever we want, but what the court is doing is some amount of reweighing. If you look at some of the cases— I actually, unfortunately, just yesterday submitted a letter with a few more cases. This court always said, for example, the district court focused too much on this defendant's autism diagnosis in a child pornography case. So it placed too much emphasis, too much weight on this one factor and not enough on the others. And that's what has happened in all of the cases in which this court has actually vacated sentences, is that it is basically saying, we believe that the district court placed too much weight— in this case, we believe on the offense conduct— and not enough on the mitigating factors. And it's not—and again, I want to go back to what Your Honor said, Judge Niemeyer— it's not simply that we believe that he should be cut a break because of the sad things that happened to him, although we do believe that's part of it. We actually believe that what happened to him here suggests that he is less of a risk to the public in the future than the district court concluded that he was. In addition, the other thing that a lot of the cases where this court has vacated sentences point out is it's not just that you have to decide whether it was appropriate or reasonable to impose a variance, but really the inquiry comes in when you're looking at how significant that variance is. Because in most cases in which this court has vacated a prior sentence, the court has always agreed that some variance is appropriate. And we basically conceded that in our briefing as well. I mean, this was a serious bank robbery, and there were some unusual factors going on here. And so some variance might be appropriate, but what all of the cases hold is that the larger the variance, the more compelling the reasons for the variance need to be. And in this case, we don't believe that those reasons are compelling enough. And when you look at the totality—and again, this is a totality analysis— that totality includes the mitigation and the aggravation. So if we did not have the mitigation in this case, and we just had the aggravating factors of this bank robbery, and they were aggravating, then perhaps a variance of this degree would have been reasonable. But when you then also consider the mitigation, it's very clear that it is not. And I'll reserve my remainder. Thank you. Mr. Maddox. Good morning, and may it please the Court. I'm Assistant U.S. Attorney Matthew Maddox, appearing here on behalf of the United States of America. Your Honors, in this appeal, the defendant is essentially asked this Court to redo the work already done ably and left to the discretion of the sentencing court in determining what the proper sentence was in this case. That is something that this Court cannot do under the Gall case and numerous precedents of this Court, under the abuse of discretion standard, which accords a broad degree of discretion to the sentencing judge in making sentencing decisions. This is not a case where the defendant alleges any procedural error. The defendant acknowledges that the Court considered both mitigating and aggravating factors in determining what the sentence was in this case. And they even concede that an upward variance was reasonable. All that's left is that the defendant is displeased with the way that the balance was struck in this particular case, and the defendant's essentially asking this Court to reweigh all of the mitigating and aggravating factors submitted to the district judge. That, again, is something that this Court can't do. But even on closer examination, what's clear is that the upward variance that was imposed in this case,  and fell well within the scope of variances that have been previously affirmed by this Court, this case is overflowing with extreme aggravating factors that clearly outweigh the mitigating factors such that a significant upward variance was appropriate. That includes the use of a fake bomb that appeared to be a credible pipe bomb, the dangerous high-speed flight from the scene of the second robbery, a violent resistance of arrest by arresting officers, a violent resistance against them, kicking and hitting the arresting officers with all his might while threatening to kill them, a violent stealing of a correctional officer's gun, and he didn't just attempt to steal the gun, he actually wrested that gun away from the correctional officer. There was also a violent escape attempt, breaking a window and climbing out of a transport van. On top of that, the defendant's extensive criminal history. As the district court noted, this was his conviction in his 18th criminal case. All of that supported a significant upward variance, notwithstanding the mitigating factors submitted to the sentencing judge. Put simply, if a significant variance wasn't warranted in this case, I can't imagine a case where it would have been warranted. And again, that variance that was imposed here, while significant, fell within the scope of variances previously imposed by this court. I wanted to turn first to the numerous aggravating factors present in this case, and there was some discussion of that just earlier today. First, they fit in three categories. There's three groups of these aggravating factors, all of them significant, and many of them not taken into account in the guidelines calculation. First, as I indicated, there was the long criminal history. Out of that extensive criminal history, 18 criminal convictions, only six criminal history points were assessed in this case. There were 13 unassessed criminal history points. That indicates a very extensive criminal history in the inability of this defendant to conform his conduct with the requirements of the law. Were those 13 points that were not assessed part of what the district judge referred to as the timed-out offenses? That's what he referred to as the timed-out offenses, Your Honor, and that was part of the reasons. That was one of the reasons why he imposed the upward variance. And, of course, it wasn't the only reason because there was lots more to talk about in this case, including the unusually serious nature of that second bank robbery, the use of the fake bomb, which is aggravating for numerous reasons. One of those reasons is that the typical robbery, the way that it occurs, whether it occurs armed or unarmed, is typically a threat is made against an individual teller, either by passing a bank note, displaying a fake gun, pretending to have a gun, or using a real gun. The threat is made against an individual teller, and then when the robber leaves after collecting money, the threat basically just goes away. This case is a world apart from that. Here you had a defendant who placed the pipe bomb on top of the counter where everybody in the bank lobby could see it, and that was nothing short of a death threat against everyone in the bank lobby at that time. Not only did he put it there at that point in time, but once he left with the money, he left the pipe bomb on the counter, which only prolonged the trauma against all of the victims inside the bank at that time. And it resulted in an emergency evacuation from the bank, which is visible on the surveillance video that was presented to the district court. So you have not just the infliction of terror against multiple individuals, but also the prolonging of that terror based on the defendant's conduct. In addition to that, the court noted the lasting traumatic impact that it had on the bank employees in this case who submitted victim impact statements, and there were several presented to the district judge in this case. On top of all that, there was a significant waste of government resources. There were multiple bomb squads that had to be called to the scene of this robbery in order to assess and determine the nature of the bomb threat that was made in this case, and it took a significant period of time and a great deal of resources before it could be determined that that bomb was indeed fake. This case in this regard is very similar to the Spencer case, which was previously heard by this court, which was a case involving a threatening letter. But the threatening letter in this particular case was unusually serious for similar reasons that the bank robbery in this case was unusually serious. That letter had powder sprinkled on it that was made to resemble anthrax. So in that case, the district court determined that the threat made against the victim in that case was unusually serious and was a justification for deviating from the guidelines in that matter. Third, there's a whole third set of aggravating factors, everything that happened after that second bank robbery. First, there was a high-speed flight. There was a witness who testified at the sentencing hearing who was an eyewitness to the flight. She saw the defendant weaving in and out of traffic at high speeds on a very busy thoroughfare in that he ran red lights, he made an illegal turn and almost caused numerous collisions and threatened the lives of other motorists on the road at that time. The next day during his arrest, again, he fought with the arresting officer and threatened to kill him. Third, a few days later, while hospitalized, he took the gun of a correctional officer, and then he made a violent attempt to escape from the transport van. Of all this conduct, only two levels were assessed under the guidelines. Now, the court may, I'm not sure how familiar your honors are with the sentencing guidelines, but having some familiarity with the guidelines, one could guess... They've been around since what, 1987? I'm sorry, your honor? They've been around since 1987. They've been around for a very long time. They've been engaged in them for a while. And typically, your honor, as you know, two levels... They can be frustrating at times. But as your honors know, two levels are typically assessed for numerous types of offense characteristics. And one could imagine a situation where two levels could have been assessed for each of these aggravating factors that I've noted. But they weren't. Only two levels out of all that conduct that happened after the bank robbery, only two levels were assessed for obstruction of justice associated with the escape attempt that occurred at the end. The guidelines didn't reflect anything that occurred before that escape attempt. The government wanted the district judge to add all those factors in, correct? That is correct. There were a number of requests or motions for upward adjustment of the guidelines, right? Yes, based on several guidelines provisions, including an upward enhancement and numerous upward departures. But all of those were denied. All of those were denied. And as your honors know, the departures and the guidelines enhancements are narrowly defined. The court has to make very specific factual findings in order to find that those enhancements apply. The requirements under 3553A are much broader. The sentencing court under 3553A can, of course, consider literally anything relating to the history and characteristics of the defendant, including an extensive criminal history, and anything relating to the history or the nature and circumstances of the offense, including post-defense conduct that counts as relevant conduct. Let me ask you this. I'll play devil's advocate on it on Ms. Silver's behalf, I suppose. What would the standard of review have been before this court had the district judge granted all the government's requests for upward adjustment under the guidelines that would get the suggested range under the guidelines to the ultimate sentence that was imposed in this case? In other words, I guess the question I have is, from the government's perspective, the optics or appearance is, well, we won't grant these requests for upwards adjustment, but we're going to sentence as if we did. Is that to adjust what the standard of review is on appeal, or is that permissible under the interplay between the guidelines and the 3553A? Well, I have two answers to that. First, yes, it's definitely permissible. This court has held numerous times in prior cases that the district court has afforded a great deal of flexibility in deciding whether to proceed by departure or whether to proceed by variance in a case where deviation from the guidelines is deemed appropriate. In fact, one such case, I believe Judge Agee wrote, the Diosdado Star case that was based on that principle. Separate from that, the provisions in the guidelines, the policy statements, the departures and the enhancements are not co-equal with the requirements under 3553A. So what happened in this case is that the court determined that the departures weren't appropriate because the court couldn't make the factual findings necessary to support the departures. But the facts submitted by the government and provided in evidence in support of those departures could also justify, as the government argued below, variance under 3553A, considering the fact that the considerations under 3553A are much broader. So what happened here was that the court made a legal determination that the departures did not apply, but at the same time made a legal determination under 3553A that the same facts justified an upward variance under 3553A. It was not to adjust any sort of degree of appellate review because the degree of appellate review doesn't change between review of whether or not departures apply versus variances. The only difference is that departures are strictly defined and variances are much broader. I mentioned the Spencer case earlier, and that case provides an illustration on this point as well. What happened in that case procedurally was that at the first sentencing on that threatening letter case, the court imposed a departure that on appellate review was deemed illegal. So there was a departure up to, I believe, a four-year sentence or somewhere about that based on a departure under the guidelines. On appellate review, the appeals determined that that departure did not apply under the facts that were found by the district judge, so the case was reversed and remanded. On remand and at the resentencing, the court got right back to the four-year sentence, but this time under 3553A and based on the same facts, the facts that there was an extremely aggravating nature to the way that the threat was made in that case. So there you had a case, and when that sentencing went up on appeal, the court affirmed. So what you had in that case, it was a reasonable, it was perfectly reasonable and appropriate for the judge to make a very significant upward variance based on the same facts that did not support a departure. And that same principle applied in numerous other cases by this court, including the Griffiths case, where the district court declined to apply an upward departure and instead proceeded by variance.  where the government asked for a departure for underrepresentation of criminal history and asked the court to depart based on underrepresentation of criminal history. The district court in that case rejected that departure, but varied upward based on the defendant's extensive criminal history. The reasoning that the district judge offered there was that though the district judge couldn't assess the seriousness of the prior history, the same thing happened in this case because the district judge didn't have the facts necessary to determine how serious some of Mr. Murren's prior convictions were. Though the court couldn't determine the seriousness of the prior offenses, the court could still vary upward based on the extensiveness of the criminal history because it shows that the defendant is dangerous. The defendant repeatedly fails to conform his conduct with the requirements of the law. And based on that reasoning, this court affirmed. There was also the Ellswick case where the district judge acted within his discretion as found by the Court of Appeals. So I don't think there's a serious question raised about whether the court had the authority to do what it did. The question I think that Ms. Silver raises is the balance. It's out of balance the way the court came out on this and that it's extensive variance and that mitigating circumstances should have kept it closer to the guideline sentence. I think that's her argument. Sure, and I have two responses to that. One, I think in this regard, the reason why I started my argument here by pointing out the standard of review is because based on my review of the defendant's brief, they kind of read like sentencing memoranda. Sentencing memoranda that you would submit to a district judge. And this court obviously is not the sentencing court. So it appears that the defendant wants this court to basically act as a sentencing court. But apart from that, there are several other cases that this court has considered in the past where they were both aggravating and mitigating factors presented. And they were argued on appeal as well. And in those cases, significant upward variances were imposed. It dwarfed the upward variance in this case. Even though the upward variance in this case is significant, you have cases where seven times the guidelines were imposed. Three times the guidelines were imposed. And these cases also included mitigating factors and the defendant on appeal would make the argument that the district judge did not properly balance the mitigation against the aggravation. But this court always upheld under the deferential abuse of discretion standard. And I know that the defendant makes the argument in their reply brief that the government's cases don't involve mitigating factors, but that simply isn't true. I'll refer the court to the Rivera-Santana case cited in the government's brief. That was a case where the district court varied up to the 20-year statutory maximum, which was a 90-month variance, after imposing numerous departures. So you basically have a guidelines range. I don't know exactly what it is off the top of my head. On top of that, the district judge imposes several departures. And then on top of that, there's a 90-month variance all the way up to the 20-year statutory maximum. There were mitigating factors in that case too. And the defendant, I'm sure, on appeal, made the argument that the court didn't properly consider or weigh the mitigating factors. But this court affirmed nonetheless. Specifically, that was an illegal reentry case after a felony conviction. And the mitigating factors that were presented were, like in this case, the defendant's poor health and also the defendant's age. It was determined by the district court that those mitigating factors were grossly outweighed by the several aggravating factors in the case, including, like this one, an extensive criminal history that included several unscored convictions that were not adequately accounted for in the guidelines range. The defendant's general criminality, based on that criminal history, and his dangerousness to the community, which is a finding that this district judge also made, and that finding was perfectly proper. So in that case, notwithstanding mitigating factors, the statutory maximum sentence was affirmed by this court. In addition to that, there was the Hernandez-Villanueva case, where there was an upward variance of 18 months above the zero-to-six-month guidelines range. That's three times the high end of the guidelines. Mitigating factors were presented there, too, including a lack of any evidence of criminal activity other than illegal reentry, and the fact that the defendant had reentered for family purposes. The district court found that the aggravating factors in that case, including the defendant's membership of a street gang, outweighed the mitigating factors, and the variance was upheld on appeal. Mitigating factors were also presented in the Hargrove case, where I believe Judge Niemeyer and Judge Agee were both members of the panel in that case. A 60-month sentence where the guidelines were zero to six months was affirmed. In that case, that case had mitigating factors. The Blake case, which a statutory maximum sentence again was imposed, mitigating factors were presented in that case as well. In each of these cases, substantial upward variances are affirmed on appeal. And it happens that the upward variance in this case is smaller than the upward variances in those cases. I wanted to respond to the defendant's argument that it was factual error for the district court to determine that when this defendant relapses, he's a danger to the community. I may have missed something from the briefs, but this is not something I remember reading in the briefs. But while sitting at the table and I heard this argument, I flipped to the joint appendix, and I'll refer the court to page 62 of the joint appendix. This is the pre-sentence investigation report that was prepared in this case. The paragraph 57 of the pre-sentence report lays out the factual basis for the defendant's first federal bank robbery. So this was the federal bank robbery that occurred back in 2004. And what it says in the factual basis for that conviction is that during the investigation, Mr. Mern told police that he had a severe heroin addiction and would not otherwise have robbed the bank. So there you have an instance in which this defendant, who is recognizably a drug addict, relapsed, or he was using drugs at the time, and he offered that as the reason for why he robbed the bank in that first case. And the defendant is now arguing that that's the reason why he committed the bank robbery and the violent resistance of arrest and the escape attempt and grabbing the correctional officer's gun. He did all that because he had relapsed. So it was not factual error for the district court to conclude that when this defendant relapses, he's a serious danger to the community. There are also issues raised in the reply brief as to... I read this and you cited it, but looking at it now, it appears that he robbed two banks in 2004. Is that accurate? That is accurate, Your Honor. There were two bank robberies similar to what occurred in this case, which happens to be another basis for an upward variance. You have basically a defendant who served a 10-year sentence in this prior case. When he gets out a few years later, he does the exact same thing. And not only does he do that, but he does serious acts of violence and dangerousness after the second bank robbery. So a 12-year sentence was perfectly appropriate in this case in the interest of deterring this particular defendant because he was not deterred by the 10-year sentence he received in the prior case. Regarding the cases that counsel presented to the panel in their 28-J letter, which they filed 12.30 in the afternoon yesterday while I was packing up on my way to Richmond, I think that the court can disregard that because there's no excuse for why that was filed so late. There are numerous cases cited in that 28-J letter. Most of them are years old. All but one of them preceded the briefing of this case. There's only one new case cited in there, and it's from May of this year. And it's an out-of-circuit, unpublished opinion. I haven't had the chance to review those cases. It may be that once I have a chance to review them, the government will seek leave to file a serve-apply so that I can respond to it. But unfortunately, I've been hampered from responding to it at this time, giving the 11th-hour file. So unless Your Honors have any further questions, I'll conclude. Thank you, Your Honor. Ms. Silver. Thank you, Your Honors. I apologize for filing my letter just yesterday, but as you know I can file a 28-J letter tomorrow if I wanted to, and I still ask the court, and the court can consider the cases that I cite therein. And it also doesn't matter, of course, when the cases were cited, as long as they are relevant to the issues before the court, which they are. I'd like to start with a couple of the cases that the government cited, suggesting that other cases have mitigation. And I'm sure there is mitigation offered in every case. And again, our point, if I haven't stressed this strenuously enough... There are hundreds, probably thousands of these cases where the discretion of a judge is reviewed. And while it's helpful to show that this case is within or without bounds in other cases, the bottom line is we're going to look at whether this judge abused his discretion in connection with the facts that he considered in this case and evaluated. And every case is unique. You've made your point that you think he did not give sufficient weight to the mitigating factors, and the government has urged that there are plenty of aggravating factors that weren't even discussed that are in the record. So what we have to evaluate is whether this amounts to something that's beyond the discretion that the court has. And while these other cases are examples of where we've approved variances or disapproved variances or butchers, it really comes down to assessing whether the court in this case acted reasonably. Whether we agree and would have imposed the sentences ourselves is basically irrelevant. It's to assess what he did. And I gather you agree with that. I just don't want to place so much emphasis on what every other court has. I mean, every one of those historical circumstances are unique. And there may be circumstances where we say categorically when you go two times above the guidelines it's just beyond the pale and we're not going to approve it. But I don't think we have that kind of case. We assess every one of the cases based on what's presented. Right, and that is absolutely correct, Your Honor. I think what the cases are more important for are certain principles, such as that way back in the Moreland case this court said that reasonableness review is not a rubber stamp. You actually do need to engage in some sort of, if you want to call it reweighing, you can call it, but it's not. And as I said at the very beginning, courts are really only supposed to vary upward in a small number of cases, and they only do 2.1% of all cases in 2017. What requires a district court to avoid upward variances? I mean, I know the statistics bear that out, but is there some restriction on when they may choose to vary? Well, I mean, the restriction is that the cases all the way back from Gall-Kimbrough say that sentencing is supposed to be rooted in the guidelines. The guidelines form the framework. They are the mooring point for the sentence. And so the court is really supposed to carefully look at and explain, which this court really didn't, why the guidelines weren't sufficient enough. So again, the court explained the 35538 factors, but the court never actually went back to the guidelines, except for one time when the court mentioned the timed-out criminal convictions. The court did not mention the guideline once in explaining its sentence. And if you actually go through the guideline factors in this case, virtually all, with one exception, of the bad conduct that was committed by Mr. Mearn is accounted for by the guideline adjustments. So there were multiple bank robberies. He got a multiple count adjustment. There was an obstruction of justice. He got an obstruction of justice enhancement. There was all of the really bad conduct in Pennsylvania. He got a two-year state sentence for that. That's coming on top of the 12 years he's serving for his state court sentence. And he also received a weapons adjustment, three levels, for the fake bomb. And I just want to close by making sure that the bomb in this case was a cardboard paper towel roll covered in duct tape and stuffed with Play-Doh, Your Honor. That didn't lessen the terror, did it? I understand, Your Honor. I mean, the bomb squads responded, and we had to say something about that. Yes, and they had to do that, Your Honor. Okay. Thank you. Thank you. We'll come down into Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Thomas S. Kleeh